# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

PATRICK J. REDA,

                              Plaintiff,

-vs-

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                              Defendant.

DECISION and ORDER

08-CV-6589-CJS

**APPEARANCES**

For Plaintiff:                            Patrick J. Reda, *pro se*
                                                1107 Monroe Avenue
                                                Rochester, NY 14620

For the Commissioner:          John J. Field, AUSA
                                                U.S. Attorney's Office
                                                100 State Street Room 620
                                                Rochester, NY 14614
                                                (585) 263-6760

## INTRODUCTION

Plaintiff Patrick J. Reda ("Reda"), brings this action *pro se* pursuant to the Social Security Act, (codified in relevant parts at 42 U.S.C. § 401 *et seq*. and 42 U.S.C. § 1381 *et seq*.) claiming that the Commissioner of Social Security improperly denied his application for disability and supplemental income security benefits for the period from December 31, 2003, to present. Specifically, Reda alleges that the decision of an Administrative Law Judge ("ALJ") was erroneous and not supported by substantial evidence contained in the record, or was contrary to law.

The Commissioner moves, (Docket No. 8), for judgment on the pleadings, contending that substantial evidence in the record supports the decision to deny benefits. Reda has cross-moved (Docket No. 13), also for judgment on the pleadings. Because the Court determines that the findings of the Commissioner are not supported by substantial

evidence contained in the record, the Commissioner's application is denied, and Reda's motion is granted.

## PROCEDURAL BACKGROUND

On April 13, 2006, at age 25, Reda filed for disability insurance and supplemental security income benefits. Reda alleged that his disability began on December 31, 2003. He claims he is unable to work as a result of myofascial pain syndrome and depressive disorder. Reda's application was initially denied on August 22, 2006, and he requested a hearing before an Administrative Law Judge ("ALJ"), which took place on August 8, 2008, in Rochester, New York. Reda was represented at the hearing by Jere Fletcher, Esq.

In a decision dated September 5, 2008, the ALJ found that although Reda suffered from a severe combination of impairments, specifically myofascial pain syndrome, he nonetheless retained the residual functional capacity to perform sedentary work with limitations (only occasionally can Reda "engage in stooping, crawling, climbing, crouching, balancing, and kneeling; the claimant has only enough concentration and attention to understand simple instructions and engage in simple task [sic]; and, the claimant can not stand and walk for more than one hour per day.") (Record 18.)

On October 30, 2008, the Appeals Council denied Reda's appeal, making the ALJ's decision the final decision of the Commissioner. On December 30, 2008, Reda filed an appeal pursuant to 42 U.S.C. § 405(g) with this Court.

## STANDARDS OF LAW

*Jurisdiction and Scope of Review*

Section 405(g) of Title 42, U.S. Code, grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Consolidated Edison Co. v NLRB*, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the Court's scope of review to determining whether the Commissioner's findings were supported by substantial evidence. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (holding that the reviewing court does not try a benefits case *de novo*). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating a plaintiff's claim. The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Lynn v. Schweiker*, 565 F. Supp 265, 267 (S.D. Tex. 1983) (citation omitted).

*Five-step sequential analysis*

For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d 496, 501 (2d Cir. 1998).

> The SSA has promulgated administrative regulations for determining when a claimant meets this definition. First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities. If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal*, 134 F.3d at 501 (citations omitted).

**DISCUSSION**

*The ALJ's physical residual functional capacity determination is not supported by substantial evidence*

The Court finds that the ALJ's physical residual functional capacity ("RFC") determination is not supported by substantial evidence in the record. The ALJ specifically found that Reda had the RFC for sedentary work, which is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a) (1980) (45 F.R. 55584, Aug. 20, 1980). Social Security Ruling 83-10 defines "occasionally" with regard to the sedentary work RFC:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR-83-10 (1979). In a June 30, 2008, report (Record 257–61), Reda's primary care physician (Record 256), Brett Robbins, M.D., indicated that in an eight-hour workday and in a competitive work setting, Reda could, on a sustained basis, sit for eight hours and stand or walk for up to one hour. (Record 258.) Dr. Robbins further indicated that Reda could frequently lift and carry, on a sustained basis without impairing or risking his health, or significantly aggravating his symptoms, up to five pounds frequently, and up to 10 pounds occasionally. (*Id.*) Dr. Robbins also stated that Reda's psychological problems do, can, or probably would interfere with his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and that Reda could be expected to miss work one or more times per month for health reasons, including medical and health care appointments. (Record 259.) Dr. Robbins further indicated that Reda would have to take unscheduled thirty-minute breaks during a workday every one to two hours, and that he was likely to be absent from work more than four days per month. (Record 260.)

In his examination of the vocational expert ("VE"), Jay Steinberger (Record 318–26), the ALJ posed the following hypothetical questions and received the following responses:

Q. Hypothetical number one, assume a hypothetical individual of the same age, education and work experience as the claimant, who can perform the full range of light work with the following additional limitations. This individual would be limited to…occasional stooping, crawling, crouching, climbing, balancing, and kneeling; and would have sufficient attention and concentration to understand, remember, and follow simple instructions only. Now, could that individual with those limitations perform any of the claimant's past work either as he performed that work or as it's currently performed?

A. Well, I would say under that hypothetical the counter attendant position could be performed.

Q. Okay. In the alternative, are there any occupations unskilled in nature that such an individual could perform?

A. Yes.

Q. And could you name two for me?

A. Sure. Another job that could be performed under that would be the work of the cafeteria attendant. That would be DOT number 311.677-010. That would be unskilled, SVP of two, with a light exertion level. In the US, 112,093 employed; Finger Lakes region, 321 employed. Another one that could be performed would be as an usher or lobby attendant, DOT number 344.677-014, unskilled, SVP of two, and a light exertion level. US, 115,249 employed; Finger Lakes region, 637 employed.

Q. Okay. Hypothetical number two, assume all the limitations that I gave you in hypothetical number one, but assume further that the individual would be limited to the full range of sedentary work with these additional limitations. That individual can't perform any of the claimant's past work. Is that correct?

A. That's correct.

Q. Are there any other occupations that are unskilled that such an individual could perform?

A. Yes, an unskilled job that could be performed would be a form of cashiering which would be a ticket seller, which is the job you'd find in movie theaters and parking garages, DOT number 211.467-030. That is unskilled, SVP of two. The DOT in the '80s had this listed as light. As currently performed, it would be sedentary. And that could be attributed to the introduction of computer pass systems and redesign of the workstations. In the US, 63,946 employed; Finger Lakes region, 675 employed. A second sedentary job could be done would be as a telephone solicitor or telephone marketer, DOT number 299.357-014. That in the '80s was designated as semiskilled, SVP of three. New York State Department of Labor has downgraded that job to unskilled, SVP of two. That primarily can be attributed to now [sic] software precludes the need for sufficient keyboarding skills. It is a sedentary exertion level job. In the US, 446,670 employed.... Finger Lakes region, 1,336.

Q. Hypothetical number three...[t]ake all the limitations in hypothetical number two, and assume that the individual would need 10 minutes of unscheduled breaks every hour in addition to regular breaks. Could that

> individual perform any of the, well, any unskilled occupations in the economy?
>
> A. Well, that would take him off task about 16.6 percent of the time which takes him down to about an 83 percent productivity rate. In general with a customer service function like the ticket seller, he wouldn't be able to sustain that job. A telemarketing job is performance-based, which means they're looking for outcomes versus actual time on the job, but I do believe he would not be able to meet minimum productivity standards on that job either if he's consistently hovering around an 83 percent productivity rate.

(Record 320–23.) The VE also indicated that Reda's limitation on standing, only up to one hour in an eight-hour workday, would not limit his ability to perform the jobs she identified as sedentary. (Record 325.) Reda's counsel also asked the VE a hypothetical question:

> Q. [A]ssuming an individual of the claimant's age, younger, education, and work history with the following limitations, needs to take an unscheduled break every, a 30-minute break every one to two hours, be off, otherwise or additionally off task 25% or more of the time due to problems with concentration or attendance to the effects of medication like vomiting or being drowsy, and would be limited to lifting no more than 10 pounds occasionally and being limited [to] being on his feet standing or walking no more than an hour of the day, and has difficulty reading more than one half of the time. Would there, would that person be able to do his past work?
>
> A. No, he could not.
>
> Q. Would there be any other jobs available in the national economy?
>
> A. Well, the critical factor there would be being off task 25 percent of the time, meaning that even if he was working efficiently at 100 percent of the remainder of the time, he would only be able to achieve a 75 percent productivity rate, and once you're consistently at 80 percent or lower, you'd be jeopardizing your employment.... There wouldn't be any jobs.... None that could be sustained.

(Record 323-24.) In his decision, the ALJ discounted Reda's complaints of pain, writing that,

> [g]iven the claimant's treatment history together with the objective medical evidence, his statements concerning the intensity, persistence and limiting effects of her [sic] alleged impairments are not entirely credible. Moreover, his contention that he is in constant extreme pain strains credibility. The record evidences that he had an active lifestyle. More specific, the claimant goes to the gym at the YMCA every day to exercise, stretch, swim and walk.

(Record 21.) However, Reda testified at the ALJ hearing that,

> [t]he only real places I go are to the YMCA to stretch gently, swim when I can which hasn't been for four months, and sit in a hot tub to try to loosen my muscles, relieve the pain. Besides that, I go to Wegman's sometimes if I

> need to pick anything up, and doctor's appointments. I've had my car about two and a half years and put 6,000 miles on it.

(Record 306.) Discounting the treating physician's assessment, the ALJ appeared to use circular reasoning to arrive at his RFC determination: "The consultative examiner, Harbinder Toor, M.D., opined that the claimant had no limitations for any fine and gross movements. I give weight to Dr. Toor's opinion which is reasonably accounted for by the residual functional capacity arrived at in this case." (Record 22.) This does not constitute substantial evidence to support the ALJ's determination that Reda had that RFC for sedentary work.

### *The ALJ did not comply with the treating physician rule*

Under the regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion…that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (*citing* 20 C.F.R. § 404.1527(d)(4)). Nevertheless,

> [a]n ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2). Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id*. The regulations also specify that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion." *Id*.; *accord* 20 C.F.R. § 416.927(d)(2); *see also Schaal*, 134 F.3d at 503–04

(stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion).

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Here, the ALJ selected the conditions, identified by Reda's treating physician, Dr. Robbins, that fit the ALJ's RFC assessment, but he rejected some of Dr. Robbins' findings, that did not, without identifying why he accepted some, and rejected others. Obviously, for example, the ALJ rejected Dr. Robbins' finding that Reda would miss work one or more times per month and take unscheduled breaks for thirty minutes every one to two hours per work day. (Record 21, 260.) Contrary to the requirements of the Commissioner's Rules, the ALJ failed to "provide [the] claimant with 'good reasons' for the lack of weight attributed to a treating physician's opinion." *Schaal*, 134 F.3d at 503–04; *see also* 20 C.F.R. § 404.1527 (d)(2) (71 FR 16424, 16445, Mar. 31, 2006) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). As the Second Circuit observed in *Gunter v. Commissioner of Soc. Sec.*, No. 08-5544-cv, 2010 U.S. App. LEXIS 821 (2d Cir. Jan. 15, 2010):

> Before an ALJ may elect to discredit the medical conclusions of a treating physician, she must explicitly consider (1) the frequency of examination and length, nature, and extent of the treatment relationship, (2) the evidence in support of the physician's opinion, (3) the consistency of the opinion with the record as a whole, (4) whether the opinion is from a specialist, and (5) whatever other factors tend to support or contradict the opinion. *Id*. We do not hesitate to remand when the Commissioner has not given good reasons for the weight given to a treating physician's opinion.

The ALJ did not comply with that requirement here.

Further, SSR 85-15, at 1., states the following:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15(1). Although a consultative psychiatric examination by Kevin Duffy, Psy. D., indicated that Reda could "follow and understand simple directions and instructions, perform simple tasks independently, and…maintain a regular schedule…," the ALJ's decision does not address Dr. Robbins' opinion that Reda's psychological problems interfere with Reda's "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. He…can be expect[ed] to miss work one or more times per month for health reasons, including medical and health care appointments." (Record 259.) Dr. Robbins indicated that Reda could be expected to be absent from work more than four days per month as a result of his impairments or treatments. (Record 260.) Thus, the Court finds that the ALJ did not comply with the Commissioner's rules concerning treating physician opinions.

## CONCLUSION

For the reasons set forth above, the Court, upon the pleadings and transcript of the record, directs the Clerk to enter a judgment reversing the decision of the Commissioner of Social Security, and remands the case for a rehearing.

IT IS SO ORDERED.

Dated: May 24, 2010
       Rochester, New York       /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge